UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JANE DOE, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:20-cv-00057-GFVT-MAS |
| | ) | |
| V. | ) | |
| | ) | |
| UNIVERSITY OF KENTUCKY, | ) | **MEMORANDUM** |
| | ) | **OPINION** |
| Defendant. | ) | **&** |
| | ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant University of Kentucky has moved the Court for summary judgment on both of Plaintiff Jane Doe's claims. [R. 110.] Plaintiff has failed to respond to the Motion and has submitted no summary judgment motion of her own. For the reasons that follow, UK's Motion for Summary Judgment [R. 110] is **GRANTED**.

**I**

This suit was initiated following a breakdown in negotiations between the two parties mediated by the Office for Civil Rights ("OCR") at the US Department of Education. [R. 1 at ¶ 41.] Plaintiff Jane Doe was offered admission and a full scholarship to Defendant University of Kentucky's Honors Program in November of 2018. [*Id.* at ¶ 8.] In March of 2018, Plaintiff and her mother began communicating with UK regarding Doe's food allergies. [*Id.* at 11.] After speaking with various UK officials, Doe claims that UK did not offer suitable dietary options that would comply with her food allergies and sensitivities. [*See, e.g.*, *id.* at ¶¶ 10, 14.] UK concluded that appropriate dietary accommodations were available to Doe based upon her medical documentation and denied her subsequent "Dining Appeal." [R. 1-5.] Concurrent to her

discussions with UK regarding dietary accommodations, Doe claimed that UK's housing accommodations were insufficient in light of her allergies and sensitivities. [R. 1 at ¶¶ 24–25.]

At some point on or before May 30, 2018, Doe filed a complaint with OCR. [*Id.* at ¶ 26; R. 46 at ¶ 26.] On July 20, 2018, UK's Office of Institutional Equity and Equal Opportunity sent Doe a new offer of accommodations for her housing and dietary needs. [R. 1-6.] Doe rejected these proposed accommodations. [R. 1 at ¶ 41; R. 46 at ¶ 35.] OCR attempted to continue negotiations between the parties, but Doe considered further negotiations "futile" and withdrew her complaint with OCR. [R. 1 at ¶ 41.] In lieu of beginning college at UK, Doe enrolled at the University of Pittsburgh. [*Id.*; R. 46 at ¶ 41.]

Doe initiated this lawsuit in July, 2019. [R. 1.] Doe asserts that her food allergy to dairy qualifies as a disability for purposes of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). [*Id.* at ¶¶ 45, 47, 52.] Doe further asserts that under these provisions, UK failed to provide reasonable accommodations for her disability and thereby discriminated against her by denying her equal and safe access to its program and services. [*Id.* at ¶¶ 47–48, 52–53.]

In its Summary Judgment Motion, UK argues: (1) Plaintiff failed to propose reasonable accommodations, UK made good-faith efforts in the OCR interactive process, and UK offered reasonable accommodations to Plaintiff; (2) Plaintiff's claims are barred by sovereign immunity and the Eleventh Amendment; and (3) UK participated in the interactive OCR process in good faith.[1] [R. 110.] Plaintiff has failed to respond to the Motion.

---

[1] As to UK's good-faith defense, the Court will not address whether or not UK participated in the OCR process in good faith. Plaintiff made no specific allegation that UK did not participate in the process in good faith, nor did Plaintiff demonstrate the elements of such an allegation. For instance, Plaintiff neither alleges nor provides evidence that "appropriate accommodations could have been provided but for the school's lack of good faith." *Newell v. Central Michigan Univ. Bd. of Trustees*, 2020 WL 4584050, at * 9 (E.D. Mich. 2020) (slip copy) (citing *Clark v. Whirlpool Corp.*, 109 F. App'x 750, 755 (6th Cir. 2004).

**II**

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying the parts of the record that establish absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has satisfied its burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and

draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

**A**

On June 2, 2021, Doe requested a "brief enlargement of time in which to file her Motion for Summary Judgment," stating that the "E-Transcript Viewer" app counsel used was not working and that Doe would submit her motion by Thursday, June 3, 2021 at the latest. [R. 114.] This Court granted Doe's modest request for an extension of time. [R. 116.] It has been roughly two months and Doe has submitted no further documents to the Court. The time to do so has now elapsed.

In certain circumstances, when a party completely ignores or fails to address an issue, a court is justified in deeming the argument or claim abandoned. The Sixth Circuit does not pull punches in describing when parties are deemed to have abandoned claims, or how District Courts should deal with the issue:

> This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24–25 (6th Cir. 2003); *see also Colston v. Cleveland Pub. Library*, No. 1:12–CV–204, 2012 WL 3309663, at *2 n. 2 (N.D. Ohio Aug. 13, 2013) (deeming a claim abandoned and granting summary judgment when a plaintiff "did

4

  not respond or even mention [the] claim in her opposition to Defendants' motions for summary judgment").

*Brown v. VHS of Michigan, Inc.*, 13–1054, 2013 WL 5583818 (6th Cir. Oct. 10, 2013). A line of cases in the Eastern District has come to the same conclusion. S*ee Knittel v. First Fin. Mortgage Corp.*, CIV.A. 08–44–JBC, 2009 WL 1702174 (E.D. Ky. June 17, 2009) ("By failing to respond specifically to Citi mortgage's arguments on those claims, the plaintiffs have abandoned them, and the court will grant summary judgment to Citi mortgage.") (citing *National Information and Communications Equipment Network, Inc. v. Willigan*, No. 06–28–DLB, 2007 WL 2979928, at *10 (E.D.Ky. Oct. 11, 2007) (additional citations omitted)).

  By not responding, Plaintiff has left the Court with no legal arguments to consider on her behalf for the issues raised in UK's thorough Motion. The Court also considers the summary judgment precept that the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and that "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). When these rules are considered together, the case is strong for dismissing the uncontested arguments outright. Nevertheless, while the Court believes that it is justified in granting UK's Motion solely on the basis of Smith's failure to respond to these arguments, this is ultimately unnecessary because the claims still fail, even if the Court does not deem the arguments abandoned.

A

  This case is in federal court by way of Plaintiff's discrimination claims brought under Title II of the ADA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. [R. 1 at 10–11.]

The Eleventh Amendment generally protects states from suit in federal court. U.S. Const. amend. XI; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996). This Eleventh Amendment protection "is far-reaching and bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments . . .." *Lanier v. Kentucky Com'n on Human Rights,* 2007 WL 2407274, at *2 (W.D. Ky. Aug. 20, 2007) (citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100–01 (1984)). Only where Congress has explicitly abrogated a state's immunity to suit by statute, or where the state itself has consented to suit, will a federal court have jurisdiction over a state defendant. *See Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). Further, courts have consistently held that Kentucky's public universities are state agencies and are protected under the Eleventh Amendment. *See Bleid Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 976 F. Supp. 2d 911, 914 (E.D. Ky. 2013); *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993) (holding that a university like the University of Kentucky is an "arm of the state under state law . . .."). The Eleventh Amendment, therefore, bars suits against UK and its officials unless an exception applies. Here, no exception applies. UK has neither consented to suit, nor has Plaintiff plead a constitutional violation which would establish a private cause of action. *U.S. v. Georgia*, 546 U.S. 151, 159 (2006) ("insofar as Title II creates a private cause of action against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity"). Consequently, Plaintiff's claims for money damages are barred in light of UK's Eleventh Amendment immunity.

Further, Plaintiff also fails to meet the exception carved out for prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123 (1908) (finding an exception to Eleventh Amendment immunity for claims for injunctive relief against individual state officials in their official

capacities); *see also Carten v. Kent State University*, 282 F.3d 391, 395 (6th Cir. 2002). In the present case, Plaintiff has named only UK and no individual state official in his-or-her capacity. [*See* R. 1.] Accordingly, Plaintiff does not meet the prospective injunctive relief exception and Count I is barred by the Eleventh Amendment in its entirety.

**B**

Notwithstanding the fact that Plaintiff's ADA claim is barred by the Eleventh Amendment, both Plaintiff's ADA and Rehabilitation Act allegations fail as a matter of law because Plaintiff did not propose reasonable accommodations and UK offered reasonable accommodations. Violations of the ADA and the Rehabilitation Act are analyzed under the same framework.[2] *Gati v. Western Kentucky Univ.*, 762 F. App'x 246, 250 (6th Cir. 2019); *see also Mote v. City of Chelsea*, 284 F.Supp.3d 863, 874 (E.D. Mich. 2018) ("Section 504 of the Rehabilitation Act parallels the command of the ADA concerning accessibility to public facilities for persons with disabilities, but it applies only to 'any program or activity receiving Federal financial assistance' "). UK does not appear to dispute that it receives federal funds and, accordingly, Section 504 applies.

Given the facts of the case, the Court interprets Plaintiff's allegations as a failure-to-accommodate claim, rather than an intentional-discrimination claim under the ADA analysis.[3]

---

[2] Further, as the Sixth Circuit has noted, most of the law in ADA has arisen in the employment discrimination context. Nevertheless, the "decisional principles" of those cases may be applied to cases involving disability discrimination in education. *See McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997).

[3] There are at least two cases that show the Sixth Circuit treating failure to accommodate claims as separate and distinct claims from intentional discrimination claims. *See Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004) ("Title II does more than prohibit public entities from intentionally discriminating against disabled individuals. It also requires that public entities make reasonable accommodations for disabled individuals so as to not deprive them of meaningful access to the benefits of the services such entities provide."); *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) (Service animal case wherein the Sixth Circuit separately addressed an ADA claim for reasonable modification of the defendant city's policies to permit the plaintiff to keep the service animal and a separate and distinct intentional discrimination claim under Title II of the ADA). Further, because Plaintiff's claims allege UK's failure to accommodate her dietary restrictions, and does not allege that UK

7

To make out a *prima facie* case of disability discrimination, Plaintiff must show that "(1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Gati*, 762 F. App'x at 250 (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)). In order to meet the third requirement, Plaintiff must show that UK failed to reasonably accommodate her. Additionally, Plaintiff must propose reasonable accommodations in order to succeed on her claim. *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 812 (6th Cir. 2020) (citing *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725–26 (6th Cir. 2000)). Thus, as to Plaintiff's failure-to-accommodate claim, the primary issue to be determined is whether Plaintiff's proposed accommodations were reasonable and whether they should have been implemented. As many courts have recognized, the determination of what constitutes a reasonable accommodation is highly fact-specific and requires a case-by-case inquiry.[4] *See, e.g.*, *Anderson*, 798 F.3d at 356. Even with a highly fact-specific inquiry, courts within the Sixth Circuit have decided the reasonableness of accommodations at the summary judgment stage. *See, e.g., Shaikh v. Lincoln Memorial Univ.*, 608 F. App'x 349 (6th Cir. 2015); *see also Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 436 (6th Cir. 1998).

      In the present case, UK has shown that it offered reasonable accommodations to Plaintiff and is entitled to summary judgment as a matter of law. As the Sixth Circuit has noted in the employment context, "an employee cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation." *Gati*, 762

---

took any adverse action against her *because* of her food allergy, the Court will not consider an intentional-discrimination claim.

[4] The Sixth Circuit has also noted that federal courts should defer to a university's "considered judgment" when it comes to "the proper emphasis and content of a school's curriculum." *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 436 (6th Cir. 1998); *see also Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 812 (6th Cir. 2020).

Fed.App'x. at 252 (quoting *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008)). As discussions on dietary accommodations progressed during the OCR rapid response process, Plaintiff did little to shape the proposals outside of rejection. During the process, Plaintiff failed to propose a concrete set of accommodations that she would accept outside of a brief insistence that UK refer to the "*Lesley* DOJ case" when coming up with offers. [R. 1 at 7].

Further, the record reflects that UK spent months engaged in the process of attempting to accommodate Plaintiff, eventually proposing the following: (1) allowing Plaintiff to opt out of the otherwise-required meal plan for breakfast/lunch; (2) allowing a full-size refrigerator in her dorm room along with a standalone countertop microwave; (3) providing a meal plan of seven meals per week (dinner) at a cost of $1,100; (4) preparing for Plaintiff fourteen different dinners (recipes provided by the Plaintiff) on a rotating schedule, which Plaintiff could pick up on her own at The 90 Restaurant (which would be in close proximity to Plaintiff's housing); (5) transportation options to obtain groceries, including the Lextran bus system, Zipcar; and (6) having groceries delivered to Plaintiff from any preferred store. [R. 113 at 145.] Further, in addition to exempting Plaintiff from the meal plan, UK reached out to Lesley University to compare how its proposed accommodations aligned with Lesley's. [R. 113 at 19, 164.] Despite these efforts, all proposals were deemed totally unacceptable to Plaintiff.[5] [R. 1 at 8.]

As the record reflects, UK offered Plaintiff every accommodation that Plaintiff *originally* laid out, including releasing her from the dining plan and accommodating her housing needs, without success. [*See, e.g.*, R. 113 at 145; R. 113 at 119.] Just as in the employment context, if

---

[5] For instance, Plaintiff contends that the bus service was unacceptable because it drove through "undesirable neighborhoods" and she would have trouble carrying the groceries from a university parking lot to her suite. [R. 1 at 8.] Even while drawing all reasonable inferences in favor of Plaintiff and accepting her disputes, Plaintiff failed to offer any alternatives to UK's accommodations.

Plaintiff rejects a reasonable accommodation, she is no longer a "qualified individual" as a matter of law. *Gati*, 762 F. App'x at 252. Further, where UK's accommodations are reasonable, as its final offer was, Plaintiff is not entitled to the specific accommodations of her choosing just because she is unsatisfied. *Gati*, 762 Fed.App'x. at 252. Even drawing all reasonable inferences in favor of Plaintiff, the record reflects that Plaintiff failed to propose reasonable accommodations but, in any case, UK offered reasonable accommodations[6] to her. Consequently, for the above-stated reasons, UK is entitled to summary judgment on both Counts I and II.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant's Motion for Summary Judgment [**R. 110**] is **GRANTED**;
2. All pending motions are **DENIED as MOOT**;
3. This case is **STRICKEN** from the Court's active docket; and
4. The Court will enter an appropriate Judgment

This the 9th day of August, 2021.

Gregory F. Van Tatenhove
United States District Judge

---

[6] And, to that end, the exact accommodations Plaintiff originally sought.